UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                   Case Number 12-20423

v.                                                               Honorable David M. Lawson

MARIO HAIRSTON,

        Defendant.
_____/

## **ORDER DENYING MOTION TO REDUCE SENTENCE**

Defendant Mario Hairston filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), essentially reprising an argument he made on collateral review relating to the Bureau of Prisons' (BOP) refusal to credit him for the time he spent in state custody while his federal case was pending. Hairston pleaded guilty to Hobbs Act robbery and discharging a firearm during and in relation to a crime of violence and was sentenced by the Honorable Avern Cohn to 157 months in prison. That sentence was negotiated by his lawyer and the government to account in part for 30 months he spent in state custody after he was charged in the present case. The original plea offer was for a 180-month prison term. By Hairston's calculation, he was short-changed by seven months. Even if true, however, the seven-month disparity does not amount to extraordinary and compelling reasons under section 3582(c)(1)(A). Hairston's motion, therefore, will be denied.

I.

A.

Mario Hairston has a criminal history dating back to 2003. As a minor, he was convicted of possessing marijuana in March 2003, and in April 2003, he pleaded guilty to second-degree home invasion and conspiracy to commit home invasion. He was sentenced to Boot Camp for 90

days under the Holmes Youthful Trainee Act. In November 2003, he was convicted of driving while impaired. His Youthful Trainee status was revoked in April 2004, and he received a custodial sentence of 18 months to 15 years in prison. He was released from custody and placed on parole in May 2008. Less than a month after being placed on parole, he committed an assault. He was placed back on parole, failed to comply with his tether requirements, and absconded from supervision until his arrest in 2009. He was released on parole and violated the conditions of his release twice more. One of those violations involved a September 7, 2009, arrest for intentionally breaking into and entering a building. He was convicted of the breaking and entering charge in October 2009 and was granted parole on December 1, 2010. While on parole, Hairston robbed a 7-Eleven store on June 7, 2011. He was arrested in August 2011, and on August 29, 2011 he was returned to the Michigan Department of Corrections (MDOC) as a parole violator.

On March 13, 2012, the government charged Mario Hairston in a criminal complaint with being a felon in possession of a firearm, discharging a firearm in relation to a crime of violence, interference with commerce by threats or violence (Hobbs Act robbery), and delivering marijuana. The charges stemmed from two separate, unrelated events: the search of Hairston's home based on suspicions of drug trafficking, during which federal law enforcement found a gun, ammunition, and marijuana; and the armed robbery of the 7-Eleven store. Because Hairston was on parole to the MDOC at the time, he was taken into state custody after his arrest. He stayed in state custody for about 30 months until he was "paroled" to federal custody to serve his federal sentence in April 2014.

## B.

The state never formally found Hairston guilty of a parole violation. Shortly after his arrest by ATF agents, Hairston requested an adjournment of his parole revocation hearing due to

the possible pending federal charges in September 2011. The Michigan Parole Board granted Hairston's request and adjourned the hearing on his possible parole violation "so that [he] can address forthcoming criminal charges." Hairston was charged with eight parole violations. He later pleaded no contest to one count, which alleged possession of a handgun, and his remaining violations were dismissed. The hearing officer recommended re-parole with "nfd' (no fixed date), which means that he would have no fixed date with the parole board and would not need to serve any additional disciplinary prison time as a parolee.

The Parole Board never formally acted on the recommendation by issuing a final decision. There is no evidence in the record of a Notice of Decision, or form "CFJ-279," and therefore there is no evidence that Hairston ever formally received a sentence for his parole violation.

C.

The government tried unsuccessfully to negotiate a pre-indictment plea. Hairston apparently was prepared to plead guilty to the drug and gun charges but not the robbery-related charges. The government then took the case to the grand jury and filed an indictment on June 21, 2012, charging Hairston with Hobbs Act Robbery and discharging a firearm during and in relation to a crime of violence.

Hairston eventually pleaded guilty to both counts of the indictment, agreeing to a sentence of 157 months in prison. "The offer was initially for 180 months, but the government agreed to revise the offer to 157 months to account for the time Hairston spent in state custody for the parole violation." *Hairston v. United States*, 664 F. App'x 485, 487-88 (6th Cir. 2016). "When indicting Hairston for the charges stemming from the robbery, the government also separately indicted him for charges resulting from the search of his home; those charges were dropped as part of the plea agreement." *Ibid.* Judge Cohn accepted the guilty plea and sentenced the defendant on December

23, 2013 to 157 months in prison. Judge Cohn amended the judgment on February 4, 2014, to make clear that the federal sentence "shall run concurrent with any sentence imposed by the Michigan Department of Corrections."

D.

After filing an appeal, which he voluntarily dismissed, Hairston filed a motion to vacate his sentence under 28 U.S.C. § 2255 on January 30, 2015. He raised two issues relevant to the motion currently before the Court. He alleged that his attorney provided ineffective assistance by telling him that he would receive time-served credit for approximately 30 months of detention with the MDOC, and he argued that he was entitled to that credit against his federal sentence, an issue he raised under 28 U.S.C. § 2241.

Judge Cohn denied the motion. He concluded that Hairston's attorney provided effective assistance because counsel raised the dead time issue, which prompted the government to reduce its plea offer from 15 years (180 months) to thirteen years and one month (157 months). Judge Cohn found that counsel adequately advised Hairston about the government's reduced offer in light of the time he spent in the custody of the MDOC, and that "Hairston knew, or should have understood, that his time with the MDOC was not going to be credited against his federal sentence." Judge Cohn concluded the Court lacked jurisdiction to address Hairston's second argument because a petition under section 2241 challenging the execution of his sentence must be raised before the appropriate district court in West Virginia, the state in which Hairston was incarcerated at the time. Hairston has since been transferred to FCI Edgefield, a medium-security institution in South Carolina. Hairston appealed Judge Cohn's order, and the Sixth Circuit affirmed the decision on November 16, 2016. *Hairston*, 664 F. App'x 485.

Hairston also raised the dead time issue with the BOP several times throughout 2014 and 2015. On July 27, 2016, the BOP denied his request for a sentence reduction, concluding that Hairston's arrest in August 2011 was "unrelated to the instant federal offense" (the robbery convictions). It also stated that "[a]ny time spent in custody of [the MDOC] would have been credited towards the sentence [Hairston] was serving for their state, [sic] and therefore is ineligible to be applied to [his] federal sentence."

Hairston later filed a *pro se* motion for compassionate release on September 8, 2020 due to the incapacity of his wife, who was suffering from terminal cancer. The Court appointed counsel under the Criminal Justice Act, who filed a supplemental motion in October 2020. Hairston withdrew that motion on January 20, 2021, after his wife had passed away. On January 28, 2021, he submitted a request to the Warden of FCI Edgefield, raising the same argument about crediting his dead time that he raised in his motion to vacate sentence, but never heard back. He filed a second motion for compassionate release, on March 9, 2021, which is now before the Court.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Hairston relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" *Id.* at 516 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

A.

The government does not dispute that Hairston's request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Hairston argues that extraordinary and compelling reasons warranting a reduced sentence result from the BOP's failure to credit the time he served in the custody of the MDOC. The government maintains that he is not entitled to such a reduction and that the Court should decline to exercise its discretion by reducing his sentence further.

"A defendant convicted of a federal crime has a right under 18 U.S.C. § 3585(b) to receive credit for certain time spent in official detention before his sentence begins." *United States v. Wilson*, 503 U.S. 329, 330 (1992). However, the BOP generally has the exclusive right to calculate credit given toward service of an imposed term of imprisonment. *United States v. Gibbs*, 626 F.3d 344, 349 (6th Cir. 2010). It is true that a "defendant shall be given credit toward the service of a

term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence." 18 U.S.C. § 3585(b). However, it is the Attorney General and the BOP, rather than the district court judge, that has the "power to determine such credit." *Gibbs*, 626 F.3d at 349 (citing *United States v. Wilson*, 503 U.S. 329, 333 (1992)). The defendant seeks to take advantage of the Court's recently expanded discretion to define "extraordinary and compelling" reasons for compassionate release to reduce his sentence on a basis that otherwise would have been unviable. *See Elias*, 984 F.3d at 518. Hairston's circumstances, however, are neither extraordinary nor compelling.

As an initial matter, and as Judge Cohn observed, this request is more appropriately presented as a petition for a writ of habeas corpus under 28 U.S.C. § 2241 because Hairston "essentially is requesting relief from the execution of a federal sentence." *United States v. Trotter*, No. 12-20841, 2016 WL 4046908, at *3 (E.D. Mich. July 28, 2016) (citing *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991)); *see also Alexander v. N. Bureau of Prisons,* 419 F. App'x 544, 546 (6th Cir. 2011). "[C]laims seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241." *Terrell v. United States*, 564 F.3d 442, 447 (6th Cir. 2009). Hairston currently is incarcerated at the Edgefield FCI in South Carolina. There is no indication that Hairston pursued such relief in the District Court for the District of South Carolina or any federal district court in West Virginia, where he was incarcerated when he filed his motion under section 2255 before this Court.

In any event, the government insists that Michigan already credited the 30 months that Hairston spent in state custody. It points to Hairston's Parole Violation Formal Hearing Summary and Recommendation, in which a parole hearing officer dismissed all but one parole violation

count and recommended that Hairston be re-paroled with no future fixed date, meaning that he did not need to serve any additional disciplinary prison time as a parolee. The government contends that this document proves that Hairston entered into a parole plea deal that resolved his parole violation, thereby receiving a sentence of credit for time served toward his parole violation. But without a formal, final decision, or form "CFJ-279," the document does not prove much, as it simply constitutes a recommendation. *See* MDOC Policy Directive 06.05.104(X), ECF No. 108-2, PageID.807; Mich. Comp. Laws § 791.240a(9)-(10). Without evidence that the Parole Board issued a final decision, there is no evidence that Hairston ever formally received a sentence for his parole violation.

The government nevertheless contends that the state credited Hairston's time automatically. That is because a prisoner on parole remains in the "legal custody" of the MDOC. Mich. Comp. Laws § 791.238(1). A prisoner who violates the "provisions of his or her parole . . . is liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment." Mich. Comp. Laws § 791.238(2). "When a person on parole commits another felony and is arrested and detained, the time of detention continues to accrue toward the fulfillment of the originally imposed sentence because at no time has the convict been released." *People v. Johnson*, 283 Mich. App. 303, 310, 769 N.W. 2d 905, 909 (2009) (citing Mich. Comp. Laws § 791.238(1), (2), and (6)); *see also People v. Armisted*, 295 Mich. App. 32, 58, 811 N.W. 2d 47, 50 (2011) (same). The only exceptions to this rule occur if the prisoner is on "escape status, parole abscond status, or bond release status." MDOC Credit Memo, ECF No. 105-2.

Pointing to an MDOC memo prepared in October 2015, the government contends that Hairston was on parole for his 2004 Macomb County cases (home invasion), for which he was sentenced to a statutory maximum of 15 years, and his 2009 Wayne County cases (breaking and

entering), which exposed him to a statutory maximum of 10 years. The MDOC determined that Hairston was exposed to a maximum parole term of 25 years. The government believes that when the ATF arrested Hairston on August 29, 2011, he immediately began to accrue credit toward the fulfillment of his two state sentences, the unserved portion of his 25-year maximum term of imprisonment.

Hairston takes issue with this "credit by implication argument." He first contends that this policy runs afoul of 18 U.S.C. § 3585(b), which provides that a defendant is entitled to credit for the time that he served in official detention "as a result of the offense" for which he was sentenced "that has not been credited against another sentence." He insists that he was held in state custody for a parole violation "as a result of the [instant offense]." *Ibid.* Without a formal parole violation, his federal crimes are the only "instant offens[es]" subject to section 3585's mandate. He also insists that this policy raises due process concerns, given the lack of available means by which an individual could challenge such computation of time.

These arguments, however, must be viewed in the context of section 3582(c)(1)(A)(i), under which the defendant must demonstrate extraordinary and compelling reasons to reduce his sentence. The defendant's argument focuses on a possible discrepancy of seven months' credit against his federal sentence. The reduction of 23 months off the cap in his plea bargain was the result of give-and-take negotiations, and the defendant accepted the result. His arguments to the contrary have been fully vetted by the district court and the court of appeals. The record is clear that the defendant did receive a good chunk of credit. As the Sixth Circuit observed:

> [Defense counsel] was concerned that the time that [Hairston] was spending [in state custody] would not be credited" and "wanted to make sure that that didn't happen." To ensure that Hairston would be credited for the time he spent in state custody, [defense counsel] negotiated with the government to revise the plea offer from 180 months down to 157 months. . . . [Defense counsel] negotiated with the government to reduce the term of imprisonment in the plea offer by twenty-three

> months to account for Hairston's time in state custody. [Counsel] testified that he kept Hairston informed about the plea negotiations, including the negotiation about revising the plea offer to ensure Hairston received credit for his time served in state custody.

*Hairston*, 664 F. App'x 488, 490. The absence of a formal determination may explain why the parties, during plea negotiation and sentencing, believed that Hairston would not get credit for the time served in state custody while awaiting trial in this matter.

It is clear that the government struck a deal to reduce the defendant's potential sentence in light of his time served in the custody of the MDOC. To grant compassionate release here would allow Hairston to use 18 U.S.C. § 3582 to renegotiate his plea agreement and involve the Court in a matter that is usually left exclusively to the BOP. *Gibbs*, 626 F.3d at 349. A seven-month discrepancy does not constitute an extraordinary and compelling reason to reduce Hairston's sentence.

### III.

Hairston has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 103) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: May 17, 2021